1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>ERIC BRANDO PULIDO-MUZQUIZ,<br><br>　　　　　　　Defendant. | CASE NO. 09CR4213-LAB<br>　　　　　　　09CR4214-LAB<br><br>**ORDER DENYING MOTION FOR REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582** |

　　　　In 2009, Eric Brando Pulido-Muzquiz pled guilty to distribution of cocaine and kidnapping a U.S. citizen in Mexico and demanding $200,000 from her family for her release. The Court imposed a total custodial sentence of 210 months, followed by 5 years of supervised release. Pulido has served approximately 152 months of his sentence and is scheduled to be released from Bureau of Prisons ("BOP") custody on October 31, 2024. He moves for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), under which a court may modify a defendant's term of imprisonment if it concludes that "extraordinary and compelling reasons" warrant a reduction after considering factors set forth in 18 U.S.C. § 3553(a).

　　　　Pulido urges the Court to reduce his sentence to time served because he suffers from headaches and high blood pressure, which he argues increase his risk of contracting COVID-19. (Dkt. 46 at 2, 4). He also states that the need

1   to care for his mother, his behavior in custody, and his assistance to prison
2   staff necessitate his early release. (Dkt. 50 at 1). The Government opposes his
3   motion, arguing that he not only failed to exhaust his administrative remedies,
4   but he also doesn't have a "serious physical or medical condition" within the
5   meaning of the Sentencing Commission's policy statement, particularly in light
6   of his refusal to take the COVID-19 vaccine offered to him in April 2021. (Dkt.
7   56-1, Appendix ("App.") at 17–18). The Court agrees.

8       First, under 18 U.S.C. § 3582(c), a "court may not modify a term of
9   imprisonment once it has been imposed except . . . upon motion of the Director
10  of the Bureau of Prisons, or upon motion of the defendant." A defendant may
11  bring a § 3582(c) motion only after he or she has "fully exhausted all
12  administrative rights to appeal a failure of the Bureau of Prisons" to bring the
13  motion on his behalf, or after "the lapse of 30 days from the receipt of such a
14  request by the warden of the defendant's facility, whichever is earlier." 18
15  U.S.C. § 3582(c)(1)(A). Here, the Government contends that Pulido failed to
16  exhaust his administrative remedies because his request to the prison warden
17  makes no mention of his mother, his behavior in custody, or his assistance to
18  prison staff, all of which are bases for which he now moves for compassionate
19  release. (Dkt. 28 at 29–31, 176–80). "Proper exhaustion requires the inmate
20  present the same factual basis for the compassionate-release request to the
21  warden as he presents to the court." *United States v. Valdes*, 2020 WL
22  2542630, at *2 (S.D. Cal. May 18, 2020). Although the Court acknowledges
23  that it remains unsettled in this Circuit whether there is a requirement that the
24  defendant exhaust the precise issues on which he now moves for
25  compassionate release, the Court finds that, at a minimum, "a reasonable
26  degree of overlap" is required in order to ensure that the warden is given "a fair
27  opportunity to consider whether to make the motion on the defendant's behalf."
28  *United States v. Narez*, No. 1:05-CR-00231-AWI, 2021 WL 5566787, at *4

1    (E.D. Cal. Nov. 29, 2021) (quoting *United States v. Knight*, No. 1:15-CR-393,

2    2020 WL 4059886, at *2 (M.D.N.C. July 20, 2020)). Having not previously

3    raised these grounds—or even borderline similar grounds—to the BOP,

4    Pulido's motion as to these bases must be denied.

5          Aside from his failure to exhaust, Pulido hasn't demonstrated that his

6    physical and medical conditions are extraordinary and compelling reasons

7    justifying a modification of his sentence. Specifically, Pulido hasn't shown that

8    his headaches and high blood pressure substantially diminish his ability to

9    provide self-care or that he can't be effectively treated within the correctional

10   facility. U.S.S.G. § 1B1.13, App. Note 1(A)(ii)(I). He likewise hasn't established

11   that Terminal Island FCI, where he is currently located according to the BOP

12   website, is unable to safeguard his health during the remainder of his sentence.

13   To the contrary, it appears that the BOP has properly attended to Pulido's

14   medical conditions by providing him with prescription medication and

15   consistent medical treatment throughout his incarceration. (App. 1–16).  The

16   BOP has also acted to abate Pulido's fear of contracting COVID-19 by

17   implementing strong COVID-19 prevention policies, including mandatory

18   testing for COVID-19 when inmates are exposed, vaccinations for inmates and

19   staff, and medical isolation of any inmates known or suspected to have COVID-

20   19.       Bureau        of      Prisons,       *BOP:       COVID-19       Update*,

21   https://www.bop.gov/coronavirus/ (last accessed July 29, 2022). These

22   circumstances mitigate the risk that Pulido will contract COVID-19 or another

23   life-threatening illness.

24         Moreover, despite Terminal Island FCI offering the COVID-19 vaccine to

25   all its inmates, Pulido rejected the opportunity for immunization, even though

26   the vaccine substantially lessens the risk of becoming seriously ill from the

27   virus. (Dkt. 56 at 4; App. at 17–18); *see also* Centers for Disease Control and

28   Prevention,     Science     Brief:    COVID-19     Vaccines     and     Vaccination,

https://cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html (last accessed July 29, 2022) (stating that "COVID-19 vaccines are highly effective against hospitalization and death for a variety of strains"). Given Pulido's refusal to take the vaccine, there is no support for his contention that he would be safer or less at risk outside of custody.

Pulido's other reasons, including his concerns about the care for his mother and his good behavior/assistance in prison, are also not "extraordinary and compelling" reasons warranting his release. According to the Sentencing Commission's policy statement, the only types of family circumstances that rise to the level of "extraordinary and compelling" include the death or incapacitation of the family member caregiver of the inmate's child or the incapacitation of the inmate's spouse or registered partner. U.S.S.G. § 1B1.13, App. Note 1(C). Neither of those two situations is present here. And the Sentencing Commission likewise doesn't suggest that a defendant's behavior or activities in prison warrant release. In fact, the Sentencing Commission expressly comments that the "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13, App. Note 3; *see United States v. Love*, No. 10-CR-02418-MMM, 2022 WL 1204104, at *2 (S.D. Cal. Apr. 22, 2022) (holding that the defendant's "efforts toward rehabilitation—including . . . good behavior—are laudable but do not constitute an extraordinary or compelling justification" for early release); *United States v. Fowler*, No. 17-CR-00180-RS-2, 2021 WL 5113189, at *3 (N.D. Cal. Nov. 3, 2021) ("The promise of rehabilitation alone, however, is no reason for early termination of a sentence. Otherwise, sentences would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense.").

Finally, as a separate basis for denying Pulido's motion, the Court finds that the sentencing factors under 18 U.S.C. § 3553(a) continue to heavily

support his original sentence. Pulido's crimes were not limited to distributing a federally controlled substance. According to the Pre-Sentence Report, on the evening of November 4, 2009, as his then 21-year-old victim was driving from Mexico toward the San Ysidro Port of Entry, Pulido pulled his vehicle in front hers while his co-conspirators pulled their vehicle behind, thereby boxing her in and forcing her to stop. The co-conspirators then grabbed her from her car, placed her in the trunk of her vehicle, and took her to a house in Tijuana. Pulido placed a call to the victim's family using her cell phone, threatening harm to the victim and to her family if a $200,000 ransom was not paid. The victim was held captive in a closet for three nights until she was rescued by Mexican law enforcement authorities.

Pulido's crimes were unquestionably serious, and his original sentence reflects not only the severity of his offenses, but also the need to promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public. 18 U.S.C. § 3553(a)(2)(A)–(C). Even giving Pulido's arguments the full weight he advocates, granting him early release from prison would be inconsistent with the countervailing § 3553(a) sentencing factors mentioned above.

Pulido's motion for early release is **DENIED**.

**IT IS SO ORDERED**.

Dated: August 1, 2022

**HON. LARRY ALAN BURNS**
United States District Judge